# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YINERIS ANDINO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLU KIJAKAZI, | : | |
| Commissioner of Social Security | : | NO. 21-2852 |

## O P I N I O N

SCOTT W. REID                                        DATE:  April 18, 2022
UNITED STATES MAGISTRATE JUDGE


Yineris Andino brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain

review of the decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request

for Review to which the Commissioner has responded.  As explained below, I conclude that her

Request for Review should be denied and judgment entered in favor of the Commissioner.

### I.      *Factual and Procedural Background*

Andino was born on March 20, 1974.  Record at 251.  She completed the sixth grade in

Puerto Rico.  Record at 320.  She worked in the past as a packer, and as an office cleaner.

Record at 320, 337.  On July 19, 2019, and August 9, 2019, respectively, Andino filed

applications for DIB and SSI, asserting disability since June 3, 2019, due to asthma.  Record at

98, 251, 319.  She has also alleged disability due to the side effects of her asthma medication,

and depression.  Record at 41, 42.

Andino's applications for DIB and SSI were denied initially, and upon reconsideration. Record at 70, 71, 94 and 95.  Andino then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Transcript at 130, 132.

A hearing before an ALJ was held on August 31, 2020.  Record at 34.  On September 29, 2020, however, the ALJ issued a written decision denying benefits.  Record at 18.  The Appeals Council denied Andino's request for review on April 28, 2021, permitting the ALJ's decision to serve as the final decision of the Commissioner of Social Security.  Record at 1.  Andino then filed this action.

**II**.    ***Legal Standards***

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration

requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

## III.    *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ determined that Andino suffered from the severe impairments of asthma and allergic rhinitis.  Record at 21.  He determined that she also suffered from hypertension, but that it was not severe.  *Id*.  He then decided that Andino's alleged depression was not a medically determinable impairment because "there was no objective evidence within the record indicating either a diagnosis or treatment for such."  *Id*.  The ALJ went on to determine that no impairment or combination of impairments met or medically equaled a listed impairment.  *Id*.

The ALJ found that Andino retained the RFC to perform light work, with the following limitations:

> Occasional climbing of ropes, ladders, scaffolds, ramps, and stairs, and occasional kneeling and crawling; can perform other postural activities no more than frequently; no more than frequent exposure to unprotected heights and moving mechanical parts; and only occasional exposure to extreme temperatures, humidity and wetness, and dust, odors, fumes, and pulmonary irritants.

Record at 22.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Andino could return to her past relevant work as a housekeeper/cleaner. Record at 25-6. Alternatively, he found at the fifth stage of the sequential evaluation that Andino could work as an office helper, sorter, or inspector/packer. Record at 26-7. He decided, therefore, that she was not disabled. Record at 27.

In her Request for Review, Andino argues that the ALJ wrongly failed to (1) consider the vocational impact of the frequent emergency room visits and hospitalizations caused by her asthma; (2) develop the evidence of her depression; and (3) consider the vocational impact of her inability to communicate in the English language. She also argues that (4) the ALJ and Appeals Council judges who determined that she was not disabled held authority unconstitutionally, because the appointment of former Commissioner Andrew Saul violated the separation of powers, under *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (Jun. 20, 2020).

**IV.**   *Discussion*

    *A.*    *Andino's Emergency Treatment for Asthma*

The ALJ acknowledged that Andino was treated for her asthma and allergies at the emergency room at St. Luke's Hospital multiple times during the period between May, 2019, and March, 2020.  Record at 23-4.  Specifically, she went to the emergency room on May 8, 2019 to obtain refills of her asthma medications.  Record at 23, 476.  Andino was also seen at the emergency room for the treatment of respiratory symptoms on June 4, 2019, December 8, 2019, and January 30, 2020.  Record at 23, 24, 470, 656, 908.

As the ALJ also noted, Andino was hospitalized between March 10-12, 2020, for respiratory symptoms.  Record at 24, 620.  The ALJ wrote that this hospitalization was due to "an acute asthma exacerbation precipitated by an upper respiratory infection and medication noncompliance."  Record at 24.  He wrote:  "She reported not taking any of her prescribed inhaled corticosteroids or long-acting inhalers, and having run out of Advair one month prior." *Id*.

Andino argues that the ALJ failed to recognize the impact of this frequent treatment upon her ability to sustain work.  She maintains that the ALJ minimized the significance of her hospitalization by attributing it to medicine non-compliance without considering "the possible reasons [she] may not comply with treatment or seek treatment consistent with the degree of [her] complaints" as required under Social Security Ruling (SSR) 16-3p.  Andino argues that the ALJ should have recognized that her failure to comply with medication was the result of her "status as an indigent individual with a sixth grade education and in ability to understand English" before "relying on non-compliance to find that [her] asthma exacerbations were not disabling."  Brief in Support of Request for Review at 4.

In fact, however, the ALJ was not suggesting that Andino was non-compliant because her symptoms were not as severe as alleged, as contemplated by SSR 16-3. Nor was he dismissing the significance of her limited education and limited English facility. Rather, the ALJ was explaining his conclusion that Andino's symptoms were "well-controlled on her regular medication regimen." Record at 24.

Although the ALJ cited Andino's respiratory infection, the evidence of record clearly supports his conclusion that medication non-compliance was a factor in Andino's March, 2020, hospitalization. In a post-hospitalization treatment note dated March 18, 2020, Andino's pulmonologist, Christopher Alia, MD, wrote:

> Patient was interviewed with the help of a Spanish interpreter, as noted above. The patient reports that she had stopped taking her Advair consistently after the November visit despite my instructions to take the medication consistently. She also was taking some of her nasal medications inconsistently as well.

Record at 618.

The evidence of record is equally supportive of the ALJ's conclusion that, when Andino took her medication as prescribed, her symptoms were well-controlled. The same March 18, 2020, treatment note states: "She is very interested in injection therapy but has not demonstrated that it is necessary by being on a stable asthma inhaler regimen." Record at 617. A treatment note issued by a nurse practitioner at Dr. Alia's pulmonology practice on May 11, 2020, just a few months before Andino's August 31, 2020, hearing, repeats: "As her asthma is currently well controlled with current inhaler regimen Xolair is not indicated." Record at 608.[1]

---

[1] As early as June 20, 2019, Andino reported to her general practitioner that "she does not really use the Flonaise" and that "she does not use her nebulizer without (*sic*) that much either." Record at 469. It is possible, therefore, that medicine non-compliance was actually a larger factor in Andino's history of emergency treatment than the ALJ realized.

Thus, assuming good medicine compliance, and taking into consideration that one of Andino's cited emergency room visits was solely for the purpose of obtaining medication refills, (Record at 476), Andino has not demonstrated that she needs so much emergency treatment that the ALJ erred in failing to find that she was unable to work for this reason.

   B.    *Depression*

Andino did not allege depression in her applications for benefits.  Record at 98, 251, 319. In his opening statement at the hearing, Andino's counsel referred only to asthma.  Record at 38. However, in her Disability Report, Andino wrote, in part:  "I feel like I have no life; I have no happiness.  I don't know what to do and I have to cry because I am depressed.  It is not easy for me."  Record at 465 (Spanish original at 389).

At her hearing, Andino also testified:  "I feel so bad I get depression and so I start crying all of a sudden.  When I get very bad depression I cry all the time."  Record at 42.  The ALJ asked:  "Are you getting any treatment for depression?"  *Id*.  Andino responded:  "A year ago when I moved to this state I had some help, but I stopped going because I – at the end I was just ending at [INAUDIBLE] because she wasn't helping me and every – every session she was answering just the same."  *Id*.  Andino's counsel did not ask a follow-up question about depression.  Record at 43-4.

The ALJ recognized that Andino alleged depression, despite her failure to make a formal claim.  However, he found Andino's depression was not a medically determinable impairment because "there was no objective evidence within the record indicating either a diagnosis or treatment for such."  Record at 21.  Andino now argues that the ALJ erred in failing to develop her claim of depression, arguing that he could have had a state agency mental health professional

review the evidence, sent her to a consultative psychological examination, or obtained testimony from a medical expert.

Andino is correct in observing that an ALJ has a duty to develop the record even when a claimant is represented by counsel, because an administrative proceeding is not adversarial in nature. *Felder v. Colvin*, Civ. A. NO. 16-1231, 2016 WL 8739674 at *3 (E.D. Pa. Nov. 1, 2016), *approved and adopted* 2017 WL 1397312 (E.D. Pa. Apr. 19, 2017); *Nguyen v. Astrue*, Civ. A. No. 06-3343, 2008 WL 200175 at *4, n. 3;  *Schwartz v. Halter*, 134 F. Supp.2d 640, 656 (E.D. Pa. March 8, 2001).

Nevertheless, the claimant still has the ultimate burden of producing sufficient evidence to show the existence of a disability.  *Schwartz*, *supra*.  In *Schwartz*, for example, an ALJ was found to have failed in his duty to fully develop the record by declining to order psychological testing requested by the claimant's attorney.  134 F. Supp.2d at 656.  There, however, "Schwartz produced sufficient evidence to put the ALJ on notice that he may have low intelligence," including school records showing that he was held back in two grades.  *Id*. at 657 and n.18.

Here, on the other hand, Andino presented no evidence that she suffered from a potentially disabling mental impairment.  Although she testified to sadness and tearfulness, she did not allege at any point that she was limited in her work-related functioning by depression. On the contrary, Andino indicated in her disability report that she was limited only in lifting things, walking, and vision.  Record at 463 (Spanish original at 387).  She indicated that she was unlimited in intellect, concentrating, memory, completing tasks, following instructions and getting along with others.  *Id*.  Unlike the counsel in *Schwartz*, Andino's counsel did not request testing or an examination.  Much less did Andino come forward with a medical diagnosis or opinion that she suffered from a medically determinable mental impairment.

On this record, it is not possible to conclude that the ALJ failed to fulfil a duty to develop the record regarding Andino's claimed depression.  Therefore, Andino has not shown that she is entitled to relief in this regard.

      C.      *Inability to Communicate in English*

Andino also argues that the ALJ erred in failing to consider the impact of her inability to communicate in English on her ability to work.  She concedes that as of April 27, 2020, the Agency revoked the educational category of inability to communicate in English, so that it is no longer considered at the fifth stage of the sequential evaluation.  *See* SSR 20-01p, 2020 WL 1285114 at n.8.  She argues, however, that this rule does not apply to her, because her applications were filed prior to the April 27, 2020.  The Agency, however, claims that the application date is irrelevant, and the newer regulations apply because the ALJ's decision was issued after April 27, 2020.

It is largely irrelevant whether SSR 20-01p applies here.  The ALJ in this case found at the fourth stage of the sequential evaluation that Andino could return to her past relevant work as a housekeeper/cleaner.  The vocational factors considered only at the fifth stage obviously do not apply to this decision.  In any event, it is clear that Andino was able to work in the past in this field at her present level of English facility.

Andino also worked in the past as a packer, which is one of the three jobs which the ALJ alternatively found she could perform at the fifth stage.  Record at 26-7, 327.  Thus, even if the ALJ had considered the effect of Andino's poor English on her ability to perform this job, he would certainly have found that the job was not precluded.

**D.**     ***Seila Law LLC v. CFPB***

Andino's final argument is that she is entitled to a new hearing on the basis that the present decision in her case was issued by a Commissioner hired under conditions which were found to be unconstitutional in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020).  In that case, the United States Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single head who serves for a longer term than the president, and who can only be removed from that position for cause.  Andino argues that *Seila* applies to the Social Security Administration because the Commissioner serves for six years and is removable only for cause.  42 U.S.C. § 902(a)(3).

Nevertheless, a year after *Seila Law* was decided, the United States Supreme Court defined some of the limits of that decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021).  In *Collins*, shareholders relied upon *Seila Law* in seeking to undo some actions of the Federal Housing Finance Agency ("FHFA").  The Supreme Court said that the shareholders "read far too much into" *Seila Law*.  141 S. Ct. at 1788.  It explained that *Seila Law* did not invalidate the actions of an officer whose terms of service were unconstitutional; "settled precedent" confirmed that the unlawfulness of a removal provision "did not strip an FHFA director of the power to undertake the other responsibilities of his office."  *Id*. and n. 23.

The *Collins* court specifically decided that, unlike in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), the actions taken by the FHFA directors were valid:

> Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA … as void.

*Id*. at 1788 (Italics in original).

Under *Collins*, then, there is no reason to regard any actions taken by a Social Security Commissioner as void, even if 42 U.S.C. § 902(a)(3) is unconstitutional. Thus, the *Seila Law* decision does not provide Andino with an automatic right to relief.

The *Collins* court did not rule out the possibility than an unconstitutional restriction of the President's power to remove an agency head could inflict compensable harm. *Id*. at 1788-9. In these circumstances, however, it must be shown that the removal restriction was the cause of the harm suffered by the plaintiff. *Id*. at 1789. The *Collins* case was remanded to the lower courts to determine whether the plaintiffs could demonstrate this. *Id*.

Citing *Collins*, courts in this Circuit which have considered arguments such as the one raised by Andino have agreed that *Seila Law* does not compel the vacating of a disability decision by the Social Security Commissioner where the plaintiff cannot show a nexus between his or her harm and the unconstitutional removal provision. *Adams v. Kijakazi*, Civ. A. No. 20-3591, 2022 WL 767806 at **9-11 (E.D. Pa. Mar. 14, 2022); *High v. Kijakazi*, Civ. A. No. 20-3528, 2022 WL 394750 at *6 (E.D. Pa. Feb. 9, 2022); *Wicker v. Kijakazi*, Civ. A. No. 20-4771, 2022 WL 267896 at **8-10 (E.D. Pa. Jan. 28, 2022); *Mor v. Kijakazi*, Civ. A. No. 21-1730, 2022 WL 73510 (D.N.J. Jan. 7, 2022); *Crossley v. Kijakazi*, Civ. A. No. 20-2298, 2021 WL 6197783 at *8 (M.D. Pa. Dec. 31, 2021).

Many other courts have reached the same conclusion. *Shannon R. v. Commissioner of Social Security*, 2021 WL 5371394 at **7-9 (W.D. Washington, Nov. 18, 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141 at *18 (D. Neb. Nov. 15, 2021); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498 at *15 at n. 12 (M.D.N.C. Nov. 9, 2021) (Report and Recommendation); *Lisa Y. v. Commissioner of Social Security*, No. C21-5207 BAT, 2021 WL 5177363 at *8 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB,

2021 WL 4998397 at **2-3 (W.D.N.C. Oct. 27, 2021); *Tracey Ann. P. v Kijakazi*, No. 20CV1163-LAB(RBB), 2021 WL 4993021 at *18 (S.D. Cal. Oct. 27, 2021) (Report and Recommendation); *Robles v. Commissioner of Social Security*, No. 220CV01069JDPSS, 2021 WL 4285170 at *4, n. 6 (E.D. Cal. Sep. 21, 2021); *Angelita O. v. Kijakazi*, No. 1:20-CV-00034-AJB, 2021 WL 4146085 at *18 at n. 13 (N.D. Ga. Sep. 13, 2021).

Certain courts have rejected 12(b)(6) motions to dismiss Social Security cases based on *Seila Law*, finding that the claimants have standing to challenge unfavorable decisions on the basis of an unlawful removal provision. *Sylvia A. v. Kijakazi*, No. 5:21-CV-M-BQ, 2021 WL 4692293 at *3 (N.D. Tex. Sep. 13, 2021), *report and recommendation adopted* 2021 WL 4622528 (N.D. Tex. Oct. 7, 2021); *Tafoya v. Kijakazi*, No. 21-CV-00871-REB, 2021 WL 3269640 at *5 (D. Colo. July 29, 2021); *Dante v. Saul*, No. CV 20-0702 KBM, 2021 WL 2936576 at *8 (D.N.M. July 13, 2021). However, Justice Alito specified in *Collins* that *Seila Law*'s holding on standing "does not mean that actions taken by such an officer are void *ab initio* and must be undone." 141 S. Ct. 1761 at 1787 at n. 24. Thus, these cases do not relieve a claimant of showing harm connected to the unconstitutional removal provision.

Even in the absence of a decision from the Court of Appeals for the Third Circuit, therefore, it is not difficult to see that *Collins* requires Andino to demonstrate a nexus between the decision denying her disability benefits and 42 U.S.C. § 902(a)(3). She has not done this. Thus, if *Seila Law* and *Collins* require the reversal or vacating of any Social Security disability decision, it is not this one.

*V*.      ***Conclusion***

In accordance with the above discussion, I do not find legal error on the part of the ALJ, and I find that he applied the correct legal standard.  I conclude, therefore, that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE